## CHARLESTON.

STATE *v.* JOE GIROD

(No. 5981)

Submitted October 16, 1928. Decided October 23, 1928.

*Billingslea & Blair*, for plaintiff in error.

*Howard B. Lee*, Attorney-General, and *R. A. Blessing*, Assistant Attorney-General, for the State.

MAXWELL, JUDGE:

The defendant was tried and convicted in the criminal court of Marion county on an indictment charging him with unlawfully and feloniously having in his possession a quantity of moonshine liquor. The statute, section 3 of Chapter 32A of the Code, makes the first offense under the act a misdemeanor, and the second offense a felony. The indictment in the present case alleges a former indictment and conviction, and a subsequent offense.

The officers with a search warrant entered defendant's residence, one room of which was used as a grocery store, and found in a pantry, behind a pan hanging on the wall, two pint bottles containing moonshine liquor. On the second floor of the building was found "a keg, about a sixteen gallon keg, about full of grape and raisin mash in a state of fermentation." In an old abandoned street car, on defendant's premises along side his house, some of the officers found a pop bottle containing moonshine liquor, under a shelf or counter against the wall. The defendant was in the house at the time, and was arrested. He denied knowledge of the liquor found in the pantry and the street car. When asked about the substance which the officers found on the second floor of his resi-

dence, he said he had put some fresh black grapes up there, but denied the presence of the raisins and other materials.

Defendant's son, a boy about sixteen years of age, testified that when on his way from school at noon he had found two pint bottles of liquor by a fence at the roadside, about one hundred yards from home, and had brought the bottles with him and had put them behind the pan in the pantry. He said he was going to tell his father about them, but "forgot everything about it." He was present when the search was made, but "was afraid to tell it for a good while; I thought I might get a whipping." He said that he afterwards told his mother. She was not a witness on the trial. The officer who found the pop bottle of liquor in the old street car testified that the door was fastened, but he didn't know whether it was locked or not; and that he removed a window in order to gain an entrance. The defendant said that he purchased the car and placed it on his premises with the intention of using it for a barber shop, and that he had not been inside of it since he bought it four or five months before the search. He denied any knowledge of the liquor found there, or of the door being locked. He said the children played in the car, and sometimes locked it when they went in or out.

The first point of error assigned and relied on for reversal is the action of the trial court in overruling defendant's demurrer and motion to quash the indictment. It is contended that the indictment, showing on its face that the second offense charged was not committed within one year of the former conviction, does not charge a felony. For this proposition counsel rely on the first point of the syllabus in the case of *State* v. *Zink*, 98 W. Va. 338, which states: "An indictment properly charging a former conviction of defendant of the offense of having in his possession a quantity of moonshine liquor and properly charging a 'second offense,' namely, that defendant did unlawfully and feloniously have in his possession a quantity of moonshine liquor, the date of which is within one year from the former conviction charged, is good upon demurrer." Counsel for the defendant lay special emphasis upon the words appearing in said syllabus, "the

date of which is within one year from the former conviction charged,'' and apparently take the position that that expression is to be construed as a holding that the second offense must be within one year from the prior conviction, and that the indictment must so allege. We do not think the words quoted are properly susceptible to the construction urged. That was a certified case on the sufficiency of an indictment, and this Court, in the syllabus, set forth the material allegations of the indictment before it and held them sufficient. It is not authority for the position which the defendant now urges.

The pertinent part of our statute, Code, Chapter 32 A, section 3, making a second offense for possession of intoxicating liquors a felony, reads: ''And upon conviction of the same person for the second offense under this act, he shall be guilty of a felony and be confined in the penitentiary not less than one nor more than five years * * * and if it be a second offense it shall be so stated in the indictment returned * * *.'' The statute fixes no time within which the second offense must follow the first offense to constitute a felony. It was entirely within the power of the legislature to fix a time, but it did not. In the absence of such legislative action, the courts would not be warranted in creating a time limit unless required by some other provision of law. We find none. True, an indictment for a misdemeanor, except petit larceny, must be returned within one year after the commission of the offense, Code, Chapter 152, section 10, but we are concerned here not with a misdemeanor but with a felony. The first offense does not enter into the equation save only that the fact of the conviction intensifies the character of the second offense.

On an indictment such as at bar, there is not involved a prosecution for the first offense, but solely the second, which is made more serious because of the first. We can not sustain the contention of defendant that ''it takes two live misdemeanors under our prohibition law to constitute a felony for possession.''

The case of *Wolfe* v. *State*, 135 Ark. 574, is analagous. Under a statute increasing the penalty (but not constituting a felony) for second and subsequent offenses of betting on

horse races, it was held that a defendant may be punished as for a second offense though the conviction for the first offense did not occur within one year before the return of the indictment for the second offense. It appears from the opinion that there is in that state a statute similar to our own placing a limitation of one year on initiation of prosecutions for misdemeanors. The court further said: "In some States the statute provides that in case of a subsequent conviction of the same person *during the year,* the punishment shall be increased. Under such statutes, of course, both the prior and subsequent offense must occur within the year. It will be observed that our statute contains no such limitation. It only provides an additional punishment for one who is convicted of crime after having been previously convicted of the same kind of crime. The prior offense only affects the punishment for the subsequent offense, and for that reason it is not necessary to charge and prove that the prior offense was committed within the statutory period for returning an indictment for the subsequent offense."

It is also complained that the indictment does not allege that the former conviction was carried out. This is not necessary. Under the statute the former conviction is the element that affects the later offense. The indictment clearly avers the conviction, and thus meets the requirement necessary in that particular.

State's instructions Nos. 1, 3, 4 and 5 are challenged. Instruction No. 1 tells the jury in substance that if they believe from the evidence beyond a reasonable doubt that the defendant was in 1921 convicted in the criminal court of Marion county for the unlawful possession of intoxicating liquors and subjected to fine and imprisonment therefor, and that on the 5th day of November, 1926, the defendant did unlawfully have in his possession moonshine liquor, the jury should find the defendant guilty as charged in the indictment. Instruction No. 3 is to the effect that the finding of any quantity of intoxicating liquor in the possession of a person, other than commercial liquors which were obtained and stored in homes for domestic use at a time when it was lawful to do so, shall be *prima facie* evidence that the same was moonshine liquor.

Instruction No. 4 states that proof of possession of moonshine liquor constitutes a *prima facie* case for conviction, and that evidence need not be produced that such liquor is intoxicating or suitable for beverage purposes. While instructions 3 and 4 are abstract in form, they state correct principles of law, and it not appearing to the court that the defendant on his trial could possibly have been prejudiced because of the abstraction of the propositions contained in the instructions, there appears therein to be no cause for reversal. Instruction No. 1 fairly presents to the jury the two issues involved, namely the prior conviction and the later possession of moonshine liquor. Instruction No. 5 bears solely on the weight of the evidence, and is in form or substance as heretofore frequently approved by this Court.

The court refused defendants instruction No. 2, which would have told the jury that before they could find the defendant guilty, they must believe from the evidence to the exclusion of every other reasonable hypothesis that the defendant knowingly had in his possession an intoxicating substance which was fit for beverage purposes. The court properly refused this instruction. It is not necessary to a conviction on a charge of possession of moonshine liquor that there be a determination by the jury that the substance be fit for beverage purposes. This would open a fertile field of differences of opinion as to when such substance is fit for beverage purposes. That which some would pronounce unfit, would be readily accepted and used by others. There are many who would say that none of it is fit for human consumption. Moonshine liquor is not judged by the ideals of the aesthete or the taste of the connoisseur. The only test with which the courts are concerned is whether it is an intoxicating drink within the meaning of the statute.

Defendant's instruction No. 5 was given to the jury as modified by the court. Defendant excepted to the action of the court in making this modification. The instruction as tendered would have told the jury that the state must prove beyond all reasonable doubt that the liquor offered in evidence was owned by or was in the actual possession of the defendant. As modified, the instruction stated that the state

must prove beyond all reasonable doubt that the liquor offered in evidence was owned by or was in the actual or constructive possession of the defendant. There may be some uncertainty attendant upon the use of the phrase "constructive possession," but it is not apparent, in the light of the evidence of this case, that the defendant could have been prejudiced by the use of the phraseology employed by the court. The liquor found by the officers was on the property of both the defendant's residence and his business, and under his control. If this was not actual possession, it certainly could not have been anything less than constructive possession. On the whole, we see no error on the part of the trial court in any of the instructions given or in the refusal of defendant's instruction No. 2.

It is further said that the former conviction of the defendant was not sufficiently proven on the later trial. The record shows that there were introduced in evidence the indictment, the orders of the trial court showing the defendant's plea of not guilty, his subsequent withdrawal of the plea of not guilty and the entry of a plea of guilty, the judgment and sentence of the court upon the confession, the commitment of the defendant to jail in the custody of the jailer of Marion county. There was also the oral testimony of at least one witness identifying the defendant as the person referred to in the indictment and orders which were offered in evidence. This procedure met every possible requirement.

The remaining point urged by the defendant is that the evidence was not sufficient to sustain the verdict. It was not denied that the liquor was found on the defendant's premises as testified to by the officers who made the search, but the defendant on the trial sought to explain its presence. The sufficiency of that explanation was purely a jury matter, and since the jury has seen fit to discredit the explanation, we can not say that the action of the jury was not warranted.

There appearing to be no prejudical error in the record, we affirm the judgment of the circuit court of Marion county refusing to grant a writ of error and supersedeas to the trial court.

*Affirmed.*